OPINION
CARROLL JAMES DeCOTEAU, Associate Justice.
Procedural History and Factual Background
Lt. Wade Krohmer received a report of a stolen .243 rifle from John Johnson IV on December 17, 1998 at 6:45 p.m. The victim stated that he had parked his pickup between the Elks Club and the Prairie Cinema and ran into the Elks Club to speak with his girl Mend. Upon returning to his vehicle, Johnson reported seeing a black Mercury Cougar leaving in a hurry. As he climbed into his truck, Johnson also noted that his .243 bolt-action rifle was missing.
Lt. Krohmer knew that the appellant, Mike Bell, drove a black Cougar and had seen Mike driving around Wolf Point on other occasions. Lt. Krohmer started patrolling Wolf Point looking for the black Cougar. Shortly thereafter, he spotted the black Cougar and followed it to the 900 block of West Blaine. After parking across the street, he saw Mike exit the vehicle and proceed to the front door of David Moran’s residence. Apparently no one was home and Mike returned to his vehicle. Lt. Krohmer approached Mike and told him of the reported theft of the rifle and he asked whether Mike knew anything about it. He also asked Mike if he could search his vehicle. Mike denied any knowledge of the theft and gave the officer permission to search his vehicle. The officer found a rifle in the back seat of Mike’s vehicle, which matched the description of the stolen .243 rifle. Lt. Krohmer subsequently charged Mike with a violation of Title VII CCOJ 2000 § 320.(felony theft) and Mike was referred to the Juvenile Division of the Tribal Court in accord with Title IX CCOJ 2000 § 102(g)[1].
Mike, with his mother Deb’e Bell, appeared at the initial hearing on January 26, 1999 and entered a plea of not guilty. At the initial hearing Mike and his mother were both personally served with written notice of a fact-finding hearing to be held on February 23, 1999 at 10:00 a.m., however, none of their rights were expressly stated on that notice. Several prosecution witnesses were summoned for the fact-finding hearing; however, no defense witnesses were summoned due to the defen *307 dant’s failure to submit a witness list. Mike appeared pro se and was found guilty of felony theft and sentenced to 90 days in the juvenile detention center; sentence to be reviewed in 30 days.
After appearing pro se in the Juvenile Court, Mike retained the services of Lay Advocate Leighton Reum and filed his appeal on February 26, 1999; a stay of sentence was granted the same day. Oral argument was heard on October 8, 1999, during which the appellant argued that his due pi'ocess rights were violated, stating that he was not given proper notice as required by Title v. CCOJ § 305(b). He further asserts that he had no opportunity to exercise certain discovery procedures, such as exchanging witness lists and attempting to resolve the matter informally. Still further, Mike contends that because he was not furnished with the full content of the notice requirements of § 305(b), he was not given the opportunity to have legal counsel assist in the preparation of his case and that such lack of preparation (such as calling witnesses, etc.) resulted in an unwarranted conviction.
Issue
The facts in this case are not in dispute. The sole question before the court is whether an oral notice of the contents of § 305(b), given in open court by a judge, satisfies the requirements of § 305(b).
Discussion
The appellant asserts he was denied his due process rights under Title v. CCOJ 305(b)[2]. § 305(b) states:
(b) Notice. The Court shall serve prior written notice of the date, time, and place of the hearing upon the youth, any person authorized to represent the youth and the parent(s), legal custodian or guardian. Notice shall be served in person or by certified mail, return receipt requested, or by publication in the local newspaper for a period of three (3) consecutive weeks, if the whereabouts of the parent(s), legal custodian or guardian are unknown. The youth’s full name shall not be published when notice is required by publication in any newspaper. Notice, shall also specify that the youth (and any other party served with notice) has a right to retain counsel at his/her own expense, be present, testify, present documentary evidence, call witnesses, and ask questions of all witnesses. (Our emphasis)
The appellee counters, arguing that Mike and Deb’e Bell had been in the juvenile system before and were well aware of their rights and they were given personal notice at the initial hearing by Judge Christian where he advised them of all the rights provided to juveniles under the code. In short, the appellee maintains, “due process was satisfied.”
At the initial hearing on January 26, 1999, Judge Christian read portions of the petition to Mike and his mother, Deb’e Bell. After advising them of the ‘general procedures’ in Juvenile Court and of the specific charges lodged against Mike, Judge Christian stated:
Judge Christian: ... Deb’e it is the right of the parent or guardian of the child to obtain counsel at your own expense or through the public defender’s office. To be present at all hearings pertaining to this matter. To present to this Court, documentary evidence for your child. To call witnesses for your child. And ask (questions) of all witnesses. Do you understand those rights for your child?
*308 Deb’e Bell: Un-huh (yes) (See transcript, page 2, lines 12 — 19)
The appellant relies heavily on In Re: Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) wherein the U.S. Supreme Court sets forth the standard for juvenile due process. In Gault, a 15-year-old boy was taken into custody for making lewd phone calls. At the time of his detention, both of his parents were at work and neither of them was notified of his detention. The parents did not learn until later that evening that their son had been taken into custody. After visiting the facility that evening, the parents were told by the deputy superintendent of the Detention Home that the boy would have a hearing before a Juvenile Judge the next day (June 9th) at 3:00 p.m. The deputy superintendent, who was also a Probation Officer for the County, filed a petition which did not set forth any factual basis, but made eonelusory remarks that the boy needed protection from ‘this Court’. The parents were not given a copy of the petition, nor were they advised of the contents of the petition at the informal hearing. The boy’s mother and older brother, along with two probations officers attended the informal hearing the next day. The complaining witness was not present and did not testify. The hearing was held in the Judge’s chambers and at the conclusion, the Judge said he would ‘think about it.’ The boy was held in custody for another two or three days, without explanation, and then released. Upon the boy’s release, the probation officer gave a signed note to the boy’s mother. The note was on plain paper, not letterhead, and read as follows:
“Mrs. Gault:
“Judge McGHEE has sol Monday June 15, 1964 at 11:00 A.M. as the date and time for further Hearings on Gerald’s delinquency” ”
At the June 15th hearing, the boy, both of his parents, the two probation officers and the co-defendant and his parents, were all in attendance. A referral report, which listed the charge as “Lewd Phone Call”, was filed on the day of the hearing, but was not given to the boy’s parents. The complaining witness did not attend, nor did the Judge speak with her at any time. At the conclusion of the hearing, the judge committed the boy as a juvenile delinquent to the State Industrial School “for the period of his minority [that is, until 21], unless sooner discharged by due process of law.” State law did not allow an appeal in juvenile cases, so the parents filed a writ of habeas corpus with the Arizona State Supreme Court. The Supreme Court referred the matter to the Superior Court for hearing. The Superior Court dismissed the writ. The parents then sought review in the Arizona Supreme Court, which affirmed the dismissal of the writ.
In reversing the Arizona Supreme Court, the U.S. Supreme Court held, inter alia, that ‘due process of law requires that in a juvenile delinquency proceeding the child and his parents or guardian be notified, in writing, of the specific charge or factual allegations to be considered at the hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation. The Court goes on to hold that the child and the parents have a right to be notified of the child’s right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child.’[3]
Our § 305(b) echoes the requirements set forth in Gault and further sets forth *309 the additional requirement of advising the youth and parent or guardian of their right to present documentary evidence, to call witnesses, and to ask questions of witnesses. Thus, inasmuch as § 305(b) includes all of the Gault requirements, we examine the language of the statute to determine the Court’s obligation.
305(b) requires the notice to be in wilting and must include the date, time, and place of the hearing. That requirement was met when Mike and his mother was served with a document entitled ‘Summons’ while in court at the initial hearing on January 26th. The summons contained the time, date, and place of the hearing scheduled for February 23rd. 305(b) also requires that ‘notice shall ... specify that the youth (and any other party served with notice) has a right to retain counsel at his/her own expense, be present, testify, present documentary evidence, call witnesses, and ask questions of all witnesses’. Judge Christian advised Mike and Deb’e of all of those rights directly from the bench on January 23rd. However, the plain language of § 305 requires that these rights be in writing. And it is not up to this Court to re-write the law. Indeed, it falls to us to insure that all litigants are protected to the fullest extent of the law. While we do not believe that the case at bar reaches anywhere near the severity of Gault and further, the failure of our Tribal Court in no way can be compared to the state juvenile court in Gault, we believe that the statutory requirements of 305(b) were not met and the judgment of our Juvenile Court must be reversed.
CONCUR: GARY P. SULLIVAN, Chief Justice, GARY M. BEAUDRY, Associate Justice.

. This ‘factual account’ is paraphrased from the police report of Lt. Wade Krohmer of the Wolf Point City Police, as transcribed, in the complaint and subsequently filed with the Juvenile Court.

. Currently Title IX CCOJ 2000 § 305 Fact-finding hearing, (h) Notice.

. It should be noted that the provision for a ‘‘paid for” appointed counsel does not apply in Indian Country 25 U.S.C. § 1302(6).